# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cmurray at 1:18 pm, Dec 20, 2012

| | |
|---|---|
| In the matter of: | Chapter 7 Case |
| KENNETH R. HARDIGAN | Number 12-40484 |
| *Debtor* | |
| DONALD F. WALTON,<br>United States Trustee for Region 21 | |
| *Movant* | |
| v. | |
| KENNETH R. HARDIGAN | |
| *Respondent* | |

## OPINION AND ORDER ON THE UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

Debtor filed his Chapter 7 case on March 7, 2012. On April 23, 2012, the United States Trustee ("UST") filed a Statement of Presumed Abuse, which stated that pursuant to 11 U.S.C. § 704(b)(1)(A), the UST had reviewed the materials filed by the Debtor and determined based on the criteria set forth in 11 U.S.C. § 707(b)(2)(A) that Debtor's case should be presumed to be abusive. Dckt. No. 22. On May 23, 2012, the UST filed a Motion to Convert to Chapter 11, or in the Alternative, to Dismiss this Chapter 7 Case. Dckt. No. 36.

The UST subsequently filed a Motion for Summary Judgment as to Dismissal Pursuant to 11 U.S.C. § 707(b)(2) on November 10, 2012. Dckt. No. 90. The UST's Motion argues that the presumption of abuse arises in this case and that there are no facts sufficient to rebut the presumption. *Id.* at 1. Debtor filed his Response to the UST's Motion for Summary Judgment on December 3, 2012. Dckt. No. 106. After consideration of the record in this matter, the Court now enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1) The Court adopts the parties' stipulations of fact numbered 1-117 in full. Statement of Facts Not in Dispute, Dckt. No. 87.

2) The Court takes judicial notice of Debtor's Schedule J dated September 9, 2012, attached to SunTrust Bank's Motion for Summary Judgment. Schedule J, Dckt. No. 82 at Exh. A.

3) The Court takes judicial notice of the "Means Test Analysis" proffered by the UST at the Pretrial held on November 2, 2012. Means Test, UST Exh. 1.

4) At filing, Debtor owed approximately (a) $1.7 million to SunTrust Mortgage ("STM") secured by a first deed to secure debt on his house located on Bluff Drive in Savannah, Georgia; (b) $905,000.00 to SunTrust Bank ("STB") secured by a second deed

to secure debt on the Bluff Drive property, the proceeds of which were used for construction of improvements to the residence; (c) $875,000.00, all disputed, claimed by K.A.P. Inc., for construction cost overruns and change orders; and (d) $1,360,000.00 which represents Debtor's proportional debt on a personal guaranty of debt arising from a medical office project in South Carolina. <u>Amended Schedule D</u>, Dckt. No. 39; <u>Statement of Facts Not in Dispute</u>, Dckt. No. 87 at ¶ 16.

5) Debtor revealed $9,897.44 in monthly net income as of September 2012. <u>Schedule J</u>, Dckt. No. 82 at Exh. A. In his means test calculation he showed adjusted disposable income of negative $30,125.40 per month. <u>Means Test</u>, UST Exh. 1. This resulted from Debtor claiming the total debt owed to STM on the residence divided by sixty months. Debtor contended that such debt was secured debt scheduled as contractually due, for which he is permitted a deduction, plus a similar deduction for future payments on the STB second deed to secure debt and for K.A.P., Inc.'s materialman's lien. The total claimed for these deductions was over $58,000.00 per month. *Id.*

6) Debtor is not making and will not make future payments on the STM and STB claims secured by the residence, and Debtor disputes any liability to K.A.P., Inc. Debtor plans to surrender the Bluff Drive Property, and the parties agree that the property is worth $1,500,000.00. The UST disputes these deductions for the payments to STM, STB, and K.A.P., Inc. for means test purposes because Debtor will not actually pay these sums. Alternatively, the UST argues that the STM deduction would be limited to

$12,858.58, the actual monthly payment which would come due over five years, not the amount necessary to fully amortize the entire loan balance over five years. UST Motion for Summary Judgment, Dckt. No. 90 at 19. The first deed to secure debt was not accelerated.

The parties identify these deductions as critical, perhaps dispositive, of whether the presumption of abuse arises.

## CONCLUSIONS OF LAW

Currently pending before the Court is the UST's Motion for Summary Judgment. Dckt. No. 90. Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56, governs Motions for Summary Judgment in contested matters. *See* FED. R. BANKR. P. 9014(c). The moving party bears the burden to prove that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A court may grant summary judgment "where the material facts concerning a claim cannot reasonably be disputed." Schechter v. Ga. State. Univ., 341 Fed.Appx. 560, 563 (11th Cir. 2009). In determining whether the movant has met its burden, the Court must examine the evidence and make all reasonable inferences in favor of the opponent. *In re* Pony Express Delivery Services, Inc., 440 F.3d 1296, 1300 (11th Cir. 2006).

The UST argues that there is no genuine dispute of material fact and that the UST is entitled to judgment as a matter of law, pursuant to 11 U.S.C. § 707(b)(2), dismissing

Debtor's case. One of the UST's principal contentions is that Debtor cannot deduct on his means test payments for claims secured by property which the Debtor plans to surrender. UST Motion for Summary Judgment, Dckt. No. 90 at 12-15. Debtor's means test includes monthly deductions of $14,592.07 for K.A.P., Inc.'s contractor's lien on the Bluff Drive property, $28,935.45 for STM's first mortgage on the Bluff Drive property, and $15,097.38 for STB's second mortgage on the Bluff Drive property. Means Test, UST Exh. 1, Lines 42(a), 42(b), and 42(c). The UST argues that once the deductions Debtor has taken on these lines are no longer included in the Means Test, the presumption of abuse arises.

In *In re* James, 414 B.R. 901 (Bankr. S.D. Ga. 2008) (Davis, J.), on similar facts, I held that a chapter 7 debtor may deduct future payments on a secured debt even if the debtor plans to surrender the collateral and make no such payments. Since that decision, the United States Supreme Court has ruled in two cases in a way that requires reexamination of my James decision. *See* Hamilton v. Lanning, 130 S.Ct. 2464 (2010); *see also* Ransom v. FIA Card Services, N.A., 131 S.Ct. 716 (2011).

In the Supreme Court's Lanning decision, the issue was whether, in a chapter 13 case, "projected disposable income" should take into account foreseeable downward changes to the historical amount of a debtor's income, and thus the ability to pay a chapter 13 case. Lanning, 130 S.Ct. at 2471. The Court determined that for purposes of assessing projected disposable income, a chapter 13 debtor's foreseeable changes in income should be taken into account. *Id.* at 2478 ("we hold that when a bankruptcy court calculates

a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation"). Other courts have extended this holding to apply to projected increased expenses. *See* In re Darrohn, 615 F.3d 470 (6th Cir. 2010); *see also* In re Liehr, 439 B.R. 179 (B.A.P. 10th Cir. 2010).

In contrast, the Supreme Court's decision in Ransom dealt with the expenditure side of the equation. It held that a Chapter 13 debtor, who has not historically made loan or lease payments on his car, may not take the car-ownership deduction under § 1325 when calculating projected disposable income for confirmation purposes. Ransom, 131 S.Ct. at 730 ("we hold that the Local Standard expense amount for transportation 'Ownership Costs' is not 'applicable' to a debtor who will not incur any such costs during his bankruptcy plan.")

The issue this Court decided in James is distinguishable from the issues in Lanning and Ransom. Neither case held that the James rationale was incorrect in a *chapter 7* case. They only recognized that once a debtor is in chapter 13, the test for confirmation is a forward-looking one. Notably, both Lanning and Ransom involved the interpretation of *projected* disposable income.[1] No phrase similar to "projected disposable income" is present

---

[1] 11 U.S.C. § 1325(b)(1)(B) states that "if the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." (emphasis added).

in § 707(b)(2).

After a careful review and because I find there to be no controlling contrary authority, I reaffirm the James holding and will allow these deductions for means test purposes, despite the Debtor's intent to surrender the collateral. Since the Lanning and Ransom decisions several other courts have held similarly. *In re* Rivers, 466 B.R. 558 (Bankr. M.D. Fla. 2012) (chapter 7 debtor may deduct mortgage payments on home she planned to surrender in performing "means test" calculation to determine whether her petition was presumptively abusive); *In re* Sonntag, 2011 WL 3902999 (Bankr. N.D. W.Va. September 6, 2011) (rejecting argument that Lanning and Ransom prevented chapter 7 debtors from taking a deduction for secured debt on property they intended to surrender); *In re* Ng, 2011 WL 576067 (Bankr. D. Hawaii February 9, 2011) ("I conclude that, when calculating monthly income under the means test, [chapter 7 debtors] are permitted to deduct their mortgage payments notwithstanding their intentions to surrender the Property."); *In re* Grinkmeyer, 456 B.R. 385, 387-89 (Bankr. S.D. Ind. 2011) (finding that Lanning and Ransom are applicable to chapter 13's concept of projected disposable income, which does not exist in chapter 7, and holding that a chapter 7 debtor may deduct mortgage payments on property he plans to surrender).

I hold that a chapter 7 debtor may deduct payments that are "scheduled as contractually due" to secured creditors as of the filing date or "additional payments to

secured creditors" under § 707(b)(2) irrespective of whether any such payment will be made. The permitted deduction is for payments to "secured creditors," and is intended to test, for screening purposes, the ability of a debtor *on the filing date* to make payments on existing debt. Congress intended there to be an easily applied formula for determining whether the Court should *presume* that a debtor's chapter 7 case is an abuse. Rivers, 466 B.R. at 568. The chapter 7 means test is simply a screening mechanism to determine whether a chapter 7 proceeding is appropriate. *Id.* at 566. Given this formulaic approach, the means test, including the deductions for payments to secured creditors, must be applied as of the petition date without regard to future changes. *See id.* This "snapshot" view does not lead to "senseless results", as the UST suggests, because Congress has provided that these additional forward-looking circumstances be taken into account under the totality of the circumstances analysis pursuant to 11 U.S.C. § 707(b)(3).

Next, the UST argues that no deductions should be permitted on lines 42(a) and 42(b) because it is undisputed that there is no equity to attach to either of these two liens, and thus neither debts are "secured debts" under 11 U.S.C. § 707(b)(2)(A)(iii). UST Motion for Summary Judgment, Dckt. No. 90 at 15-17. The parties have not offered any further interpretive chapter 7 decisions on this point. Section 707(b)(2)(A) states in relevant part:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the
8

>      date *of the filing* of the petition, and (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title,[2] to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii) (emphasis in original).

Having read the language of this section, I agree with the Debtor that these sums are deductible. While these claims may be subject to reclassification in the bankruptcy process under 11 U.S.C. § 506 as allowed undersecured or unsecured claims, the statute permits deduction of these amounts because it employs the terms "amounts scheduled as contractually due to secured creditors" and "payments to secured creditors". 11 U.S.C. § 707(b)(2)(A)(iii). Though the Bankruptcy Code does not define the "secured creditors", it defines "creditor" as an entity that has a claim, and "claim" as a right to payment. 11 U.S.C. §§ 101(10), 101(12). A "security interest" includes a lien created by an agreement. 11 U.S.C. § 101(51). Thus, a secured creditor holds a claim coupled with an agreement to create a lien. Non-consensual liens are treated similarly. A lien is a charge against an interest in property

---

[2] Although this Code provision references a chapter 13 plan, it allows the same credit for chapter 7 means test purposes that a chapter 13 debtor could deduct for plan confirmation. *See In re* Phillips, 417 B.R. 30, 38 (Bankr. S.D. Ohio 2009) (acknowledging in a chapter 7 case that a secured expense necessary to retain possession of a debtor's primary residence was a proper deduction under 11 U.S.C. § 707(b)(2)(A)(iii)(II)); *see also In re* Goble, 401 B.R. 261, 272 (Bankr. S.D. Ohio 2009) (in a chapter 7 case 11 U.S.C. § 707(b)(2)(A)(iii)(II) permits a deduction based on a *hypothetical* situation–the retention of the debtor's primary residence under a chapter 13 plan). Denial of this deduction in a chapter 7 would run the risk that a chapter 7 debtor could be forced into a chapter 13 case, where (s)he could then be permitted that same deduction, leaving a minimal or nonexistent unsecured dividend. This would eviscerate the congressional purpose. After all, as Congress constructed the means test, it is the possibility of a significant chapter 13 dividend which would be the impetus to denying chapter 7 relief in the first place.

which "secure[s] payment of a debt". 11 U.S.C. § 101(37). It does not limit that security to liens created by agreement. Thus, "secured creditor" also encompasses the holder of a claim coupled with any lien.

Later in the case, § 506 may subject the claims to allowance or disallowance as undersecured or unsecured, but because the means test for chapter 7 purposes is merely a snapshot on the petition date, the Court holds that the sums in Lines 42(b) and 42(c) are "amounts scheduled as contractually due to secured creditors."

As to the sum on Line 42(a), I hold that, though disputed, this amount still falls within the statute as an additional payment to a secured creditor "necessary for the debtor . . . to maintain his primary residence." *See* 11 U.S.C. § 707(b)(2)(A)(iii)(II). K.A.P, Inc. holds a contractor's lien against the Debtor and has filed a proof of claim. Though Debtor's intent is to surrender the property, the payments to K.A.P., Inc. were necessary, as of the petition date, for Debtor to maintain the Bluff Drive property, which was his primary residence. The fact that it was to be surrendered has no bearing on the mathematical calculation, just as it did not for the sums on Lines 42(b) and 42(c) under James. The Court recognizes that K.A.P., Inc.'s claim is disputed by the Debtor and that this dispute is undergoing adjudication. However, the Court refuses to exclude this deduction when, as of the petition date, no final order had been entered finding that Debtor did not owe the debt. All three deductions are therefore deductible on Debtor's means test.

The United States Trustee also disputes the proper amount of the STM deduction on line 42(c), and I conclude he is correct. Debtor's deduction on an unaccelerated secured debt is limited to the monthly payments which will fall due over sixty months, not the entire note balance. I thus hold that Debtor's deduction on Line 42(c) is limited to the Trustee's calculation of $12,858.58. *See* UST Motion for Summary Judgment, Dckt. No. 90 at 19. Debtor's Response to the UST's Summary Judgment Motion acknowledges that $12,858.58 is the proper amount. Debtor's Response, Dckt. No. 106 at 7-8.

Because an allowance of $12,858.58 from Line 42(c), $15,097.38[3] from Line 42(b), and $14,592.07 from Line 42(a) is permitted, I deny the United States Trustee's Motion for Summary Judgment. It is not necessary to determine whether the deductions Debtor has taken on Lines 22(a), 23, 24, 25, 27, or 56(a) of his mean's test are improper, as the UST argues. UST Motion for Summary Judgment, Dckt. No. 90 at 6, Exh. B. In other words, for purposes of this Order, I assume the UST is correct on these items of the means test. Even if the UST's position is upheld in its entirety on each of these items and Debtor's is overruled, there will be no increase in Debtor's disposable income The adjusted disposable income advocated by the UST of $37,340.00 reduced by the total of these deductions is a negative number (-$4,344.39),[4] and therefore the presumption of abuse does not arise. *See*

---

[3] The Court recognizes that Debtor now contends that the contract rate of interest should be used in calculating this amount, which would bring this sum to $17,639.12, or potentially to $19,308.47 if the default rate of interest is used. Debtor's Response, Dckt. No. 106 at 8. The Court does not need to decide this issue because the Court finds that even using the original amount proffered by the Debtor, Debtor still passes the means test.

[4] Assuming, *arguendo*, that the remainder of the UST's means test calculations are correct, the Court determined Debtor's adjusted monthly disposable income as follows: The Court's adjusted amounts on Lines 42(a), 42(b), and 42(c) ($14,592.07, $15,097.38, and $12,858.58 respectively) add up to $42,548.03. Using the

not arise. *See* 11 U.S.C. § 707(b)(2)(A)(i). Additionally, while the Court does not need to rule on Debtor's latest arguments, I note that Debtor has offered several persuasive and plausible arguments that lead to the same conclusion. *See* Debtor's Response, Dckt. No. 106.

The Court concludes that no genuine dispute of material fact is present here. The parties have stipulated to all facts material to the UST's § 707(b)(2) claim. *See* Statement of Facts Not in Dispute, Dckt. No. 87. Based on the resolution of the legal issues presented, however, the Court cannot grant the UST's Motion for Summary Judgment because the UST is not entitled to a judgment as a matter of law. Instead, the Court will treat Debtor's opposition to the motion as a cross-motion for summary judgment, and grant summary judgment in favor of the Debtor. *In re* Smith, 1993 WL 13004577, *2 (Bankr. S.D. Ga. 1993) (Dalis, J.) (court may *sua sponte* grant summary judgment to the non-moving party as long as the original movant has had an opportunity to demonstrate that his opponent is not entitled to judgment as a matter of law); Cunningham v. Rothery (*In re* Rothery), 143 F.3d 546, 549 (9th Cir. 1998) ("a court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion.").

In ruling in this matter, I have necessarily determined the legal and factual issues in dispute. Therefore, nothing remains for further adjudication as to the 11 U.S.C. § 707(b)(2) claim brought by the UST. The presumption of abuse does not arise in this case.

---

calculation of adjusted monthly disposable income ($37,340.64), subtracting these additional allowed deductions of $42,548.03 and adding back in the UST's housing deduction on Line 20(b) ($863.00), the Court finds that Debtor's adjusted monthly disposable income for purposes of this Order is -$4,344.39.

## O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the United States Trustee's Motion for Summary Judgment under § 707(b)(2) is DENIED, and Summary Judgment in favor of the Debtor is GRANTED. I have recently denied a pending Motion for Summary Judgment by SunTrust Bank in this case. Dckt. No. 110. Accordingly, this case will be scheduled for trial on the remaining issues raised under 11 U.S.C. § 707(b)(3).

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 19th day of December, 2012.